## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA, :
                                 :         CRIMINAL NO.
                                 :         3:04-cr-35 (JCH)
v.                                :
                                 :
                                 :         May 27, 2005
VAMOND ELMORE,            :

### RULING RE:  MOTION FOR RECONSIDERATION [DKT. NO. 44]

Pursuant to Conn. Local R. Civ. P. 7(c), made applicable to criminal cases through Conn. Local R. Crim. P. 1(c), defendant Vamond Elmore ("Elmore") filed a motion for reconsideration of the court's ruling [Dkt. No. 42] on Elmore's previous motion to suppress evidence gathered as a result of two searches conducted by Norwalk police.  On March 8, 2005, the court granted Elmore's motion for reconsideration [Dkt. No. 45].  Upon further consideration, the court will not alter its previous ruling.

## I.  DISCUSSION[1]

Elmore argues that United States v. Reilly, 76 F.3d 1271 (2d Cir. 1996), compels the court to reverse its previous ruling that firearms discovered pursuant to an illegal search of Tanea Humphrey's apartment should not be suppressed because the Norwalk police undertook the search based on a good faith belief that they were acting according to a valid search warrant.  Reilly stands for the proposition that police are not entitled to avail themselves of the good faith exception to the exclusionary rule when they intentionally or recklessly omit facts essential to a judicial determination of

---

[1] The court assumes the reader's familiarity with the factual record and the court's underlying ruling.  See United States v. Elmore, 359 F.Supp.2d 105 (D. Conn. 2005).

probable cause from their application for a search warrant.  See id. at 1280.

"[R]ecklessness may be inferred when omitted information was 'clearly critical' to

assessing the legality of a search."  Id. (citing Rivera v. United States, 928 F.2d 592,

604 (2d Cir. 1991)).  However, facts that are probative, but not essential, to a

determination of probable cause may be omitted.  See, e.g., United States v. Smith, 9

F.3d 1007, 1014 (2d Cir. 1993) (otherwise sufficient search warrant application not

undermined by failure to include information regarding unsuccessful investigative

efforts).

   In Reilly, 76 F.3d at 1274, the defendant was accused of a narcotics violation

after police searched his property pursuant to an invalid search warrant and found

marijuana.  Reilly's property consisted of a 10.71 acre farm that contained a main

residence, a cottage, a pond, a patio, and a gazebo.  See id. at 1273.  The pond, patio,

gazebo, and cottage were located approximately 375 feet from the main residence.

See id.  A copse of trees was also located approximately 125 feet from the main

residence.  See id. at 1274.  Reilly built a fence running along three sides of the

property, the property had hedgerows or thick woods along three sides, and Reilly

generally arranged his property so that it was shielded from outside viewers.  See id. at

1277-78.

   The police visited Reilly's property on two occasions, a year apart, prior to

obtaining a search warrant.  See id. at 1274.  However, when the police applied for a

search warrant they failed to inform the judge of their first visit to the property,

"presented only a bare-bones description of Reilly's land" when discussing the second

visit, and completely failed to provide the judge with information concerning their

behavior during the second visit.  See id. at 1280.  The affidavit failed to describe the cottage, pond, gazebo, or other characteristics of the property.  See id.  It also omitted "any information regarding distances or internal fencing."  Id.

The Second Circuit stated that, although the precise boundaries of curtilage are imprecise, the police could not fail to know that the issue of curtilage would be essential to the court's probable cause determination.  See id. at 1281.  As such, precise information regarding the police officers' actions and Reilly's property were essential. See, e.g., id. at 1280-81 (noting importance of information concerning the layout of the property and the actions of the police in making a curtilage determination).  However, the Second Circuit found the description provided by the police lacked so much crucial information as to be "almost calculated to mislead."  See id. at 1280.  In fact, the court found that the police "knew very well that large parts of their search were potentially illegal – and yet they never told the issuing judge about it."  Id. at 1281-82.  As such, the court determined that the police officers' actions while attempting to procure a search warrant were reckless and the good faith exception did not apply.  See id. at 1280.

Elmore lists several pieces of information that he claims Detective Roncinske recklessly omitted from his search warrant application, thereby negating the government's ability to avail itself of the good faith exception.  This information included Roncinske's failure to state that he did not know the confidential informant ("CI") prior to their first phone conversation, to state that he did not know when the CI last saw a firearm or narcotics in Elmore's car, to state that the information concerning Elmore's shooting had not been proven in a court of law, to state that the CI had refused to meet with police, or to alert the court that the CI was Elmore's ex-girlfriend, and hence might

-3-

have a motive to falsely incriminate him.  After noting that the court previously held that this information was insufficient for a finding that Detective Roncinske intentionally misled the magistrate, Elmore argues first that Reilly's holding requires the court to review the information without regard for the Norwalk Police's intent.  Elmore alternatively argues a fallback position: that Detective Roncinske's failure to include this information was reckless.

### A.    Intent

Elmore's first contention, that under Reilly the intent behind an officer's omissions is irrelevant, is not supported by the case itself.  Reilly specifically states:

> In *Leon*, the Supreme Court emphasized that "the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based."  We have previously held that recklessness may be inferred when omitted information was "*clearly critical*" to assessing the legality of a search.  Here, information about the distances involved, the layout, conditions, and other like particulars of Reilly's land was *crucial*.  Without it, the issuing judge could not possibly make a valid assessment of the legality of the warrant that he was asked to issue.  The good faith exception to the exclusionary rule does not protect searches by officers who fail to provide all potentially adverse information to the issuing judge, and for that reason, it does not apply here.

Id. (citations omitted) (emphasis added).

In Reilly, the Second Circuit lays out the Leon standard, requiring intentional or reckless falsity for a finding of bad faith, and then defines "reckless omission" as the omission of "clearly critical" or "crucial" facts.  The court thereafter describes why the omitted facts are crucial, namely because it was obvious that an important issue before the issuing judge would be a finding concerning curtilage, and to explain why, on a public policy basis, reckless omissions at the application stage deny the police the

protection of the good faith exception.  See id. at 1280-82.  The fact that the Reilly court does not repeatedly refer to "reckless omissions" throughout the opinion does not mean that it has abandoned any reference to intent.[2]

Quite the opposite.  The court explicitly noted Leon's deterrence rationale.  See id. at 1281.  This rationale would be rendered useless if a police officer's intent was completely disregarded by a reviewing court.  Therefore, Elmore's claim that Detective Roncinske's factual omissions deprive him of the ability to avail himself of the good faith exception to the exclusionary rule, regardless of whether these omissions were intentional or reckless, fails.

**B.    Recklessness**

Elmore alternatively argues that, if intent is a prerequisite, the Norwalk Police recklessly withheld information from the issuing judge that was crucial to that judge's decision regarding probable cause.  The crucial nature of this information, Elmore argues, is confirmed by this court's references to it in the court's original suppression ruling.  Thus, according to Elmore, under Reilly the Norwalk Police cannot avail themselves of the good faith exception to the exclusionary rule.

The court does not find this to be the case.  First, the touchstone for use of the good faith exception is whether, when reviewing the totality of the circumstances, it appears to the court that a police officer acted in objective good faith in obtaining a search warrant, acted within the scope of that warrant, and that "the warrant application

---

[2]  In fact, the court appears, at the very least, to be implying that it believed the police officers' omissions were intentional.  See Reilly, 76 F.3d at 1280 (stating that the officers' description of the searches "was almost calculated to mislead.")

[was not] 'so lacking in indicia of probable cause as to render reliance upon it unreasonable.'" <u>Smith</u>, 9 F.3d at 1015 (quoting <u>United States v. Moore</u>, 968 F.2d 216, 222 (2d Cir. 1992)).  Also, as the court pointed out, the police need not include every piece of probative information in a search warrant application.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 1014 (otherwise sufficient search warrant application not undermined by failure to include information regarding unsuccessful investigative efforts).  The excluded information must be "clearly critical."  <u>Reilly</u>, 76 F.3d at 1280.

In this case, Elmore points to facts that do not represent "clearly critical" omissions.  First, contrary to Elmore's implication, the fact that the CI was unknown to Detective Roncinske prior to this investigation came through in the warrant affidavit. Detective Roncinske made no claim that the CI was known to him, or that the CI had helped in prior investigations or provided information that previously led to arrests or convictions.  He did not try in any way to demonstrate the CI's reliability based on the CI's history.  In fact, Detective Roncinske explicitly stated that he "verified the witness's credibility by requesting they give me background information on Elmore."  Search Warrant Aff. at 2.  No reasonable court would interpret Detective Roncinske's affidavit testimony as claiming reliability based on prior history.

Second, Elmore's claim that Detective Roncinske lacked good faith because he failed to convey the alleged fact that the CI had not seen the firearms or drugs in Elmore's car for six days prior to the <u>Terry</u> stop is equally unfounded.  This information was not omitted at all.  Detective Roncinske specifically informed the issuing judge that the CI had told him that the CI had last seen the firearms "on or about 6/19/03."  Search Warrant Aff. at 3a.  Regardless of whether the CI was correct about that date, incorrect,

or even lied to Detective Roncinske, probable cause, let alone good faith, is not defeated.  See Smith, 9 F.3d at 1014 (stating the "rule in this circuit is that as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events").

Third, the fact that the CI was Elmore ex-girlfriend cannot be considered "clearly critical" information, the omission of which would serve to prove that the Norwalk Police acted recklessly.  To begin with, the information cuts both ways.  While this information might tend to support an argument that the CI may have had motivation to provide false evidence against Elmore, it also arguably supports the government's claim that the CI was in a better than average position to have insider knowledge of Elmore's alleged criminal activities.  While more precision with regards to the CI's relationship to Elmore may have been helpful, it was not crucial.

Additionally, and more importantly, if the police provided this information in a search warrant application, any hope of protecting the informant by keeping her anonymous would likely have been lost.  While, as the court stated in its original opinion, police must attempt all that can be safely attempted in order to confirm the reliability of a CI without unnecessarily risking that CI's life or safety, such a disclosure at this point in an investigation would have been far too great a risk for a reasonable officer to take.  In this case, the court would view such a disclosure, not the Norwalk Police's act of restraint, as the truly reckless act.

The final two pieces of omitted information cited by Elmore -- the unproven nature of the alleged insider information the Norwalk Police attributed to the CI and the

CI's refusal to meet with police -- are less clear cut.  Elmore argues that the fact that the court analyzed these two pieces of information as part of its finding that the Bridgeport police lacked reasonable suspicion for Elmore's traffic stop, proves that the police withheld crucial information from the issuing judge, negating good faith.  This is not the case.

First, Elmore claims that the Norwalk's Police's offense was in not declaring that the CI's insider information "had never actually been proven."  Def's Mem. Mot. to Reconsider at 6.  This strikes the court as unnecessary.  Detective Roncinske never claimed that the information was proven, or implied as such.  While greater specificity and accuracy concerning the alleged insider information would have been helpful to the issuing judge, an explicit statement that the information provided by the CI was "unproven" does not rise to the level of "clearly critical" and therefore does not raise the inference that its exclusion was reckless.  See Reilly, 76 F.3d at 1280.

Similarly, Elmore decries the fact that Detective Roncinske did not inform the issuing judge that the CI did not want to meet with police.  This was an important point. On the one hand, Detective Roncinske made clear to the judge that the CI feared for her safety.  Additionally, Detective Roncinske did not make any claim that he had met with the CI.  In fact, he provided limited information to support his conclusion as to her true identity.  However, Detective Roncinske did not inform the issuing judge that the CI did not want to meet with police.

The court, in its original suppression ruling, found that Detective Roncinske failed to collect sufficient evidence of the CI's true identity for a finding of reasonable suspicion, let alone probable cause.  See United States v. Elmore, 359 F.Supp.2d 105,

113 (D. Conn. 2005). In fact, the court specifically noted that the police could, and should, have done more to safely confirm the CI's identity, including making more of an effort to meet with the CI. See id. at 113 n.6. However, this is not a situation where the police had crucial information and did not provide it to the issuing judge. The police simply did not have enough information. It was, however, a situation in which an issuing judge could have observed the paucity of information, and required more. While it was a close call, reviewing the totality of the circumstances, it was a call the judge, not Detective Roncinske, was required to make. The police did not recklessly omit clearly critical information, they merely did not have sufficient information to provide.

The Norwalk Police acted differently than the police in Reilly. While in Reilly the Second Circuit determined that clearly critical information had been, at a minimum, recklessly withheld in a misleading manner, see 76 F.3d at 1280, the Norwalk Police's failures were failures of precision or evidence collection and did not tend to materially mislead the issuing judge, recklessly or otherwise. Additionally, many of these failures pertained to peripheral information.

The court cannot say that any omissions to the search warrant application were reckless or that trained officers could not reasonably believe that they had been issued a warrant "based on a valid application of the law to the known facts." Id. Thus, the deterrence rationale enunciated in Leon, and noted in Reilly, see id. at 1281, would not be served by denying application of the good faith exception to the exclusionary rule in this case. Therefore, because the court finds that the Norwalk Police acted in good faith, they may avail themselves of the good faith exception to the exclusionary rule.

-9-

The firearms found in Tanea Humphrey's apartment will not be suppressed.

**II.    CONCLUSION**

For the foregoing reasons, the Defendant's motion that, upon reconsideration, the court grant his motion to suppress the fruit of the search of Tanea Humphrey's apartment is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 27th day of May, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge